IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01341-CNS-NRN

CODY ERBACHER,

    Plaintiff,

v.

CITY OF FORT COLLINS and
JASON HAFERMAN,

    Defendants.

## ORDER

This matter comes before the Court on Defendants City of Fort Collins, Sergeant Allen Heaton, and Sergeant Jason Bogosian's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Request for Qualified Immunity. ECF No. 40. Mr. Erbacher voluntarily dismissed Sergeant Heaton and Sergeant Bogosian from the case as named defendants sued in their individual capacity, therefore the City is the only remaining defendant on this motion. ECF Nos. 50, 51. For the following reasons, the motion is DENIED.[1]

---

[1] The Court recently ruled on a motion to dismiss in a highly similar case involving the same defendants. Much of the Court's analysis here is identical to its order in that case. *Cunningham v. City of Fort Collins et al*, 1:23-cv-01342-CNS-SBP (pending).

1

## I. BACKGROUND[2]

### A. Mr. Erbacher's DUI arrest

On June 11, 2021, Plaintiff Cody Erbacher was pulled over by Defendant Jason Haferman—then a DUI Officer with the Fort Collins Police Services (FCPS)—who claimed that Mr. Erbacher's truck had accelerated too quickly. ECF No. 33, ¶ 51. Officer Haferman then questioned Mr. Erbacher about whether he had had any alcohol or drugs during the day, and Mr. Erbacher admitted that he had had one beer several hours earlier in the day. Officer Haferman then asked Mr. Erbacher to perform roadside tests to prove he was safe to drive. *Id.*, ¶¶ 52–55.

Mr. Erbacher explained to Officer Haferman that he had multiple TBIs and a back injury that impact his balance. *Id.*, ¶ 55. Officer Haferman did not include information about Mr. Erbacher's TBIs in the arrest report; he did, however, include "multiple false statements and exaggerations of impairment indicators." *Id.*, ¶¶ 56–57. Officer Haferman then failed to administer the roadside tests in the standardized manner in which he was trained. *Id.*, ¶ 58. Officer Haferman also failed to activate his Body Worn Camera (BWC). *Id.*, ¶ 50. However, there was another officer accompanying Officer Haferman whose BWC was activated during Mr. Erbacher's roadside tests. *Id.*, ¶¶ 59–60. The BWC footage from the covering officer shows that Mr. Erbacher performed the tests without any indication of impairment. *Id*.

---

[2] The following facts are drawn from Mr. Erbacher's First Amended Complaint and Jury Demand. ECF No. 33. For purposes of this motion, the Court accepts as true, and views in the light most favorable to Mr. Erbacher, all factual allegations contained in the complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Officer Haferman then arrested Mr. Erbacher and told him he needed to perform either a blood test or a breath test. *Id.*, ¶ 61. Mr. Erbacher chose a breath test, but Officer Haferman then asked him about medications he took and insisted that Mr. Erbacher could not do a breath test because he was taking antibiotics for strep throat. *Id.*, ¶¶ 62–64. Officer Haferman transported Mr. Erbacher to a blood draw and then to jail, where Mr. Erbacher spent the night. *Id.*, ¶ 67.

In the following weeks and months, Mr. Erbacher suffered negative impacts from the DUI arrest. He had to submit to regular drug and alcohol testing to monitor his sobriety; he had to take loans from friends and family to pay for that monitoring and to hire defense counsel; he started attending Level II alcohol education classes, at the advice of his attorney; his vehicle insurance rates increased; and he was unable to keep his job working as a security guard because of the time required by his court appearance, alcohol classes, and sobriety monitoring. *Id.*, ¶¶ 71–75. He was unsuccessful in applying for new jobs because the pending DUI charge appeared in his background checks. *Id.*, ¶ 76.

Five months after Mr. Erbacher's DUI arrest, the blood results came back negative for alcohol and all impairing drugs. *Id.*, ¶ 79. The district attorney then dismissed Mr. Erbacher's DUI charge. *Id.*, ¶ 80.

Beginning in April 2022, as detailed below, Officer Haferman's pattern of wrongful DUI arrests became the subject of significant media scrutiny. *See, e.g., id.*, ¶¶ 91–116. After a months-long internal investigation, FCPS announced publicly that Officer Haferman had resigned from the force in December 2022. *Id.*, ¶ 146. On May 3, 2023, Mr. Erbacher filed suit in Larimer County District Court; pertinent here, Mr. Erbacher's

3

complaint included a § 1983 claim against the City of Fort Collins, alleging *Monell* liability for failure to train and supervise FCPS personnel, including Officer Haferman, in lawful DUI arrest protocols. ECF No. 5, ¶¶ 181–89. The action was removed to federal court on May 26, 2023. ECF No. 1.

### B.  Officer Haferman's pattern of wrongful DUI arrests

Officer Haferman began working for FCPS as a patrol officer in 2017. ECF No. 33, ¶ 13. As part of his FCPS onboarding, Officer Haferman received training on the proper administration of Standardized Field Sobriety Tests (SFSTs). *Id.*, ¶ 23. Once on patrol, Officer Haferman accumulated such a high volume of DUI arrests that, in 2020, FCPS promoted him to DUI Officer—a role in which the officer's exclusive focus is performing traffic stops and investigating DUI-related offenses. *Id.*, ¶¶ 14, 16. Just six months into his DUI Officer tenure, Officer Haferman's DUI arrest numbers were significantly higher than those of any other DUI Officer to precede him in FCPS's history. *Id.*, ¶ 39.

At least as early as 2021, however, Officer Haferman was performing DUI stops and administering SFSTs to subjects in a manner inconsistent with his training, and in a manner designed to create a false impression of the subject's intoxication when described in his arrest reports. *Id.*, ¶ 23. More broadly, the defects in Officer Haferman's DUI investigations and arrests commonly included:

- Interpreting normal, innocuous human behaviors as "clues of impairment" when, in fact, his training instructed the opposite;

- Relying on certain made-up clues of impairment not taught in any SFST training (and claiming that those non-clues were simply the product of "advanced techniques");

- Administering the Horizontal Gaze Nystagmus (HGN) test to subjects incorrectly, and then citing his observations during botched HGN tests to support his arrest decisions;

- Writing arrest reports containing exaggerations and falsehoods regarding clues of impairment he had observed, which were clearly belied by his own body-worn camera footage; and

- Muting and deactivating his body-worn camera during citizen contacts and arrests, in violation of both FCPS policy and Colorado law.

*Id.*, ¶¶ 24–26, 30. Many of these defects were readily observable on Officer Haferman's body-worn camera recordings of DUI stops. *See id.*, ¶ 27. However, no one at FCPS ever watched his body-worn camera footage or otherwise reviewed his performance on DUI stops to ensure that those stops were conducted according to FCPS training and policy. *See, e.g.*, *id.*, ¶¶ 27–28, 34–35, 38, 41–42.

Mr. Erbacher's complaint details 15 DUI arrests made between January 2021 and April 2022 (aside from his own) in which (i) Officer Haferman used DUI investigation techniques that failed to conform with his training, (ii) the subjects' blood or breath testing came back "negative" or "presumptively unimpairing" for alcohol and drugs, and (iii) dismissals or acquittals of the subjects' DUI charges resulted. *Id.*, ¶¶ 31 (C.B.), 37 (Harley Padilla), 43 (G.C.), 44 (R.B.), 83 (Carl Sever), 84 (Jesse Cunningham), 85 (B.C.), 86 (K.S.), 87 (D.A.), 88 (G.E.), 89 (S.J.), 90 (Harris Elias), 91 (L.M.), 92 (Carly Zimmerman), 93 (Derrick Groves). Although FCPS maintained publicly that it "always conduct[s] an internal review of any DUI arrest made by one of its officers that has chemical results come back negative for drugs/alcohol," *see id.*, ¶¶ 33, 81, 109, no such review appears to have been conducted by FCPS in any of the above-listed cases until well after Officer

Haferman's conduct became the subject of media attention. Meanwhile, by the end of 2021, FCPS (as an entire agency) had made 504 DUI arrests; of those, Officer Haferman was involved in 191, or nearly 40%. *Id.*, ¶ 95.

In April 2022, Fox 31 Denver (KDVR) received a tip about Officer Haferman, and reporters at multiple outlets began investigating his pattern of wrongful DUI arrests. *See id.*, ¶¶ 98, 107. Around that time, Officer Haferman also became the subject of an internal affairs investigation at FCPS. *See id.*, ¶ 135. During an interview with FCPS's Professional Standards Unit, Officer Haferman stated that throughout his tenure as DUI Officer, he "believed he was doing good work," and "didn't have any reason to believe he wasn't doing good work based on no supervisors or experts in the field saying otherwise." *Id.*, ¶ 139.

In September 2022, the Larimer County DA informed FCPS that Officer Haferman's behavior "has demonstrated a significant disregard for the integrity of his investigations." *See id.*, ¶ 144. The next day, FCPS placed Officer Haferman on administrative leave. *Id.*, ¶ 145. In December 2022, FCPS announced that Officer Haferman had resigned, and explained that FCPS's internal review had revealed that Officer Haferman had been making false statements in his arrest reports, performing SFSTs incorrectly, and arresting subjects on DUI-related offenses without probable cause. *Id.*, ¶ 146.

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss,

a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III.  DISCUSSION

The Court has carefully considered Mr. Erbacher's complaint, the parties' briefing in connection with the City's motion to dismiss, the entire case file, and the relevant legal authority. The issues have been briefed thoroughly, oral argument would not materially assist in the determination of this matter, and the Court accordingly declines in its discretion to hold a hearing. *See* D.C.COLO.LCivR 7.1(h).

7

Below, the Court sets forth the applicable law with respect to *Monell* claims brought pursuant to § 1983 and analyzes Mr. Erbacher's *Monell* claim, leading the Court to deny the City's motion to dismiss.

### A. Municipal liability claims under *Monell*

A municipality faces § 1983 liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), where (i) an alleged official policy or custom (ii) causes a plaintiff's constitutional injury, and (iii) the policy or custom was "enacted or maintained with deliberate indifference" to an almost-inevitable constitutional injury. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (citation omitted).

A plaintiff satisfies the "official policy or custom" element by plausibly alleging that the municipality maintains one of the following:

- A formal regulation or policy statement;

- An informal custom amounting to "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law";

- Decisions of employees with final policymaking authority;

- Ratification by final policymakers of the decisions of subordinates to whom authority was delegated subject to the policymakers' "review and approval"; or

- "Failure to adequately train or supervise employees," as long as the failure results from "deliberate indifference" to the plaintiff's injuries.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations omitted). The "official policy or custom" requirement is intended to distinguish "acts of the

8

municipality from acts of employees of the municipality," making clear that municipal liability is limited to actions "for which the municipality is actually responsible." *Cacioppo v. Town of Vail, Colo.*, 528 F. App'x 929, 932 (10th Cir. 2013) (quotations omitted).

As for the "causation" element, the plaintiff must plausibly allege "a direct causal link between the policy or custom and the injury alleged." *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quotation omitted); *accord Bryson*, 627 F.3d at 788; *Schneider*, 717 F.3d at 770. Put differently, a municipality is not liable for the constitutional violations of its employees "simply because such a violation has occurred; a policy or custom must have actually caused that violation." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (citation omitted).

Finally, for the requisite state of mind element, the plaintiff must plausibly allege that the municipal action was taken with "'deliberate indifference' as to its known or obvious consequences." *Schneider*, 717 F.3d at 770 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997)). This standard is satisfied where the plaintiff alleges that a municipality has "actual or constructive notice that its action or failure to act is substantially certain" to result in a constitutional violation, and it "consciously or deliberately" disregards the risk of harm. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). While "notice" is often shown by alleging a "pattern of tortious conduct," a municipality's deliberate indifference may also be demonstrated if "a violation of federal rights is a highly predictable or plainly obvious consequence of a [the] municipality's action or inaction." *Cacioppo*, 528 F. App'x at 932 (citing *Schneider*, 717 F.3d at 771).

9

### B. Mr. Erbacher's *Monell* claim against Fort Collins

In its motion to dismiss, the City argues that the complaint contains insufficient factual content to establish *Monell* liability based upon FCPS's failure to train or supervise Officer Haferman in the performance of his DUI Officer duties.[3] *See* ECF No. 40 at 10–12. The Court disagrees.

Mr. Erbacher's complaint revolves largely around FCPS's failure to supervise Officer Haferman, or to take corrective action after he repeatedly made DUI arrests without probable cause. Based on the allegations detailed above, the Court finds that Mr. Erbacher has sufficiently pleaded a "policy" of failure to supervise for *Monell* purposes. The fact that so many DUI charges originating from a single investigating officer were dismissed after chemical testing came back negative for any drugs and alcohol, in and of itself, would naturally create a need to review the officer's performance during DUI stops to determine what corrective measures may be necessary.

The complaint indicates, however, that despite FCPS's insistence that it "always conduct[s] an internal review of any DUI arrest made by one of its officers that has chemical results come back negative for drugs/alcohol," *see, e.g.*, ECF No. 33, ¶ 33, there was no record that FCPS had reviewed any of the 15 defective DUI arrests above until

---

[3] The Court does not analyze the sufficiency of the complaint based on other theories of *Monell* liability—e.g., formal or informal policy, decisions of final policymakers, or ratification—since the City did not see fit to challenge the complaint on those bases until its reply brief. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (noting that courts generally consider issues raised for the first time in a reply brief to be waived); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (same); see also *Pub. Serv. Co. of Colo. v. Bd. of Cnty. Comm'rs of San Miguel Cnty.*, No. 04-cv-01828-REB-CBS, 2006 WL 8454233, at *1 (D. Colo. Jan. 27, 2006). ("[I]t is inequitable and improper for a party, although raising the bare bones of an argument in its opening brief, to reserve a fully developed presentation of that argument for the reply, when the opposing party has no meaningful opportunity to respond.").

after Officer Haferman's internal affairs investigation was opened, *see id.*, ¶¶ 31, 37, 43–46, 106–14. According to the complaint, had FCPS timely performed this review, Officer Haferman's pattern of conducting SFSTs incorrectly and making arrests without probable cause would have been readily apparent in his body-worn camera footage and would have prompted remedial action. *See id.*, ¶ 27. Similarly, the complaint alleges that FCPS had received other warning signs about Officer Haferman's deficient performance—including that the Larimer County DA had several "previous discussions" with FCPS about the quality of Officer Haferman's DUI investigations, and that an FCPS corporal had noticed Officer Haferman performing SFSTs incorrectly—yet FCPS did not effectively intervene or re-train him to prevent further baseless DUI arrests. *See id.*, ¶¶ 30, 144. Perhaps most significantly, Officer Haferman himself stated that he "didn't have any reason to believe he wasn't doing good work based on no supervisors or experts in the field saying otherwise." *Id.*, ¶ 139.

A clear pattern or history of a single officer's DUI charges being dismissed for lack of probable cause may demonstrate a high likelihood of similar future unconstitutional DUI arrests unless that officer is supervised differently. In that light, FCPS's failure to take corrective action in the face of Officer Haferman's pattern of meritless DUI arrests plausibly states a "policy" of deficient supervision. *See Zartner v. City & Cnty of Denver*, 242 F. Supp. 3d 1168, 1174–75 (D. Colo. 2017); *see also Vann v. City of N.Y.*, 72 F.3d 1040, 1051 (2d Cir. 1995) (focusing on the supervision of a particular problem officer and finding that summary judgment for the city was inappropriate where the evidence showed

an "absence of any significant administrative response to [the problem officer's] resumption of his abusive conduct upon reinstatement").

For the same reasons, the allegations included in the complaint satisfy the "causation" element—a requirement where a plaintiff alleges *Monell* liability for a failure to supervise employees. *See Schneider*, 717 F.3d at 769. True enough, "[t]he causation element is applied with especial rigor when the municipal police or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Id.* at 770 (citation omitted). But here, as detailed above, "a sustained pattern of [unconstitutional arrests made by] one officer that does not result in discipline or correction . . . makes the probability of another violation more likely." *Zartner*, 242 F.Supp.3d at 1176. This is sufficient at the pleading stage to demonstrate causation.

Finally, the complaint plausibly alleges the "deliberate indifference" element of *Monell* liability. Generally, to show this element, a plaintiff must allege that "[t]he need for more or different supervision . . . is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy of the City can be said to have been deliberately indifferent to the need." *Brown v. Gray*, 227 F.3d 1278, 1291–92 (10th Cir. 2017). And pertinent here, deliberate indifference to the need for supervision may be inferred by "a pattern of tortious conduct," *Cacioppo*, 528 F. App'x at 932, or where complaints or other clear warning signs "are followed by no meaningful attempt on the part of the municipality to investigate or to forestall future incidents." *Zartner*, 242 F. Supp. 3d at 1175 (quoting *Vann*, 72 F.3d at 1049).

Again, as noted above, the complaint sets forth Officer Haferman's pattern of wrongful DUI arrests in great detail, and it further alleges that the City was given numerous warning signs: over a dozen of Officer Haferman's DUI charges being dismissed as wholly devoid of probable cause; multiple complaints from the Larimer DA; and an FCPS corporal witnessing Officer Haferman's substandard SFST techniques first-hand. Despite these warning signs, FCPS failed to subject Officer Haferman's body-worn camera footage or arrest reports to any meaningful review, provide Officer Haferman with any remedial training, or otherwise intervene to prevent future wrongful DUI arrests. As such, the complaint adequately alleges that the City had ample notice of Officer Haferman's conduct to which it should have responded, but the City instead was deliberately indifferent to the obligation to prevent other constitutional violations. *See Zartner*, 242 F.Supp.3d at 1175–76.

In sum, because the complaint contains sufficient factual content to establish the City's liability for failing to supervise Officer Haferman, dismissal of Mr. Erbacher's *Monell* claim at this stage is unwarranted.

## IV.  CONCLUSION

Consistent with the foregoing analysis, Defendants City of Fort Collins, Sergeant Allen Heaton, and Sergeant Jason Bogosian's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Request for Qualified Immunity, ECF No. 40, is DENIED.

DATED this 19th day of April 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge